NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| AMELIA L., | Supreme Court No. S-17992 |
| Appellant, | Superior Court No. 4FA-18-00031 CN |
| v. | MEMORANDUM OPINION AND JUDGMENT[*] |
| STATE OF ALASKA, DEPARTMENT OF HEALTH & SOCIAL SERVICES, OFFICE OF CHILDREN'S SERVICES, | No. 1856 – November 10, 2021 |
| Appellee. | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: Michael Horowitz, Law Office of Michael Horowitz, Kingsley, Michigan, for Appellant. Mary Ann Lundquist, Senior Assistant Attorney General, Fairbanks, and Treg R. Taylor, Attorney General, Juneau, for Appellee. Nikole V. Schick, Assistant Public Advocate, Fairbanks, and James Stinson, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Winfree, Chief Justice, and Maassen and Henderson, Justices. [Carney and Borghesan, Justices, not participating.]

I.     **INTRODUCTION**

The Office of Children's Services (OCS) took custody of a mother's infant

---

[*]     Entered under Alaska Appellate Rule 214.

child, and the mother later voluntarily relinquished her parental rights. About a year later the mother petitioned to vacate her relinquishment, contending that she had made progress with her rehabilitation, that she was now caring for two of her other children, and that it was in the best interests of the child in OCS custody that he be united with his siblings.

The superior court, following an evidentiary hearing, found that the mother had failed to prove by clear and convincing evidence either of the two elements required by statute to justify vacating a voluntary relinquishment: (1) that the action would be in the child's best interests and (2) that the mother was now rehabilitated and capable of caring for the child. The mother appeals, arguing that the court failed to apply the statutory presumption that maintaining the sibling relationship was in the child's best interests. We conclude, however, that the court did not clearly err in its conclusion that the mother failed to prove the other necessary part of her case — that she was rehabilitated and capable of caring for the child. Because this finding alone was sufficient to justify the court's decision, we affirm it.

## II.    FACTS AND PROCEEDINGS

Arthur L. was born to Amelia L. and Vincent S. in June 2017.[1] Nine months later, concerned by reports of neglect and drug abuse, OCS petitioned the superior court for an adjudication that Arthur was a child in need of aid. The court agreed that Arthur was a child in need of aid and granted OCS temporary custody. In May 2019 OCS moved to terminate Amelia's and Vincent's parental rights after determining that Arthur still faced a substantial risk of harm if returned to his parents' care. The court held a termination trial in November 2019; Amelia relinquished her rights voluntarily and Vincent's rights were terminated based on an offer of proof.

---

[1]    We use pseudonyms to protect the family's privacy.

Amelia retained the right to visit Arthur monthly and to send him letters as often as she liked.

Amelia had another son, Vaughn, born in May 2019. OCS took custody of Vaughn after both Vincent and Amelia tested positive for methamphetamine. A little over a year later Amelia had a daughter. Recognizing that Amelia had made significant progress on her case plan, OCS placed Vaughn with her and the new baby for a trial home visit.

In December 2020 Amelia moved for a hearing to reinstate her parental rights to Arthur, arguing that good cause existed both because Arthur's siblings were now living with her and because she had "remedied the conditions that brought [Arthur] into care." The court held an evidentiary hearing on the motion. Amelia was not present, and the only witness was her OCS caseworker.

The caseworker testified that although OCS did not currently have any safety concerns about Vaughn or his younger sister remaining in Amelia's care, Vaughn's case remained open due to concerns about Amelia's stability and "impulsive decision-making." The caseworker described a recent incident in which Amelia and the children had left home, and the other participants in her safety plan were unable to get in touch with her for almost 24 hours. Though they eventually heard from her and were able to bring Vaughn and his sister back home, Amelia elected to stay at a hotel and was again unreachable. The caseworker noted Arthur's special needs and the fact that he worked with a child therapist on his social and emotional development. She also testified that Amelia was inconsistent with her visitation with Arthur, and the visits often did not go well.

After hearing the evidence, the court denied Amelia's request to vacate her voluntary relinquishment. The court found that she had not shown by clear and convincing evidence that she was rehabilitated and capable of providing Arthur the care

and guidance he needed or that it was in Arthur's best interests to have her parental rights reinstated. Amelia appeals; she argues that the court erred by failing to presume it was in Arthur's best interests to maintain a sibling relationship with the brother and sister now living in Amelia's household.

## III. STANDARD OF REVIEW

"In a case involving parental rights termination we review a trial court's findings of fact for clear error."[2] "Findings are clearly erroneous if, after reviewing the entire record in the light most favorable to the prevailing party, we are left with a 'definite and firm conviction that a mistake has been made.'"[3] "When reviewing factual findings we 'ordinarily will not overturn a trial court's finding based on conflicting evidence,' and will not re-weigh evidence 'when the record provides clear support for the trial court's ruling.'"[4] "Whether a trial court's findings satisfy the requirements of the child in need of aid statute" is reviewed de novo.[5]

---

**2** *Dara S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.* (*Dara I*), 426 P.3d 975, 987 n.17 (Alaska 2018).

**3** *Id.* (quoting *Brynna B. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 88 P.3d 527, 529 (Alaska 2004)).

**4** *State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs. v. Dara S.*, 458 P.3d 90, 98 (Alaska 2020) (quoting *Dara I,* 426 P.3d at 989).

**5** *Dara I,* 426 P.3d at 988 n.17 (quoting *Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1253 (Alaska 2010)).

## IV.   DISCUSSION

### A.   Vacating A Voluntary Relinquishment Of Parental Rights Requires Proof That Reinstatement Is In The Child's Best Interests And That The Parent Is Rehabilitated And Capable Of Caring For The Child.

Alaska law allows parents to voluntarily relinquish their parental rights.[6]
It also sets out the circumstances under which that relinquishment may be vacated:

> [A] person who voluntarily relinquished parental rights to a child under this section may request a review hearing, upon a showing of good cause, to vacate the termination order and reinstate parental rights relating to that child.  A court shall vacate a termination order if the person shows, by clear and convincing evidence, that reinstatement of parental rights is in the best interest of the child and that the person is rehabilitated and capable of providing the care and guidance that will serve the moral, emotional, mental, and physical welfare of the child.[7]

The law thus requires clear and convincing evidence on two separate but related issues: (1) the child's best interests and (2) the parent's rehabilitation and parenting capabilities.

Amelia argues that the superior court erred in its analysis of the best interests factor because it failed to presume that maintaining Arthur's relationships with his brother and sister, then residing with Amelia, was in his best interests as required by AS 47.10.080(w).   The statute provides that a court in CINA proceedings "shall recognize a presumption that maintenance of a sibling relationship . . . is in a child's best interests."   Here, the court stated that "attachment with a sibling is a consideration, but it's not the only consideration," and while it recognized "a preference for keeping biological families together," it ultimately determined that this preference was

---

[6]     AS 47.10.089.

[7]     AS 47.10.089(h).

outweighed by Arthur's bond with his foster family and his likely "diminishing attachment to" Amelia.

It may be, as Amelia contends, that the superior court's statement that maintaining the sibling bond was a "preference" meant that it failed to give the factor the weight due a statutorily mandated presumption. But regardless of the court's best interests finding, the court did not clearly err in finding that Amelia failed to meet her burden under AS 47.10.089(h), because to succeed on her motion she was also required to prove her rehabilitation and ability to parent, which she failed to do.

**B.    The Superior Court Did Not Clearly Err In Finding That Amelia Failed To Show That She Was Rehabilitated And Capable Of Caring For Arthur.**

A parent moving to vacate an earlier voluntary relinquishment of parental rights has the burden of showing by clear and convincing evidence not only "that reinstatement of parental rights is in the best interest of the child" but also "that the [parent] is rehabilitated and capable of providing the care and guidance that will serve the moral, emotional, mental, and physical welfare of the child."[8] The superior court recited several facts in support of its conclusion that Amelia failed to meet this burden. It noted that although Amelia, "[t]o [her] credit," had initiated the process of vacating the relinquishment by signing an affidavit, she then failed to appear at the hearing. The court was "very concerned" about the incident the caseworker described, in which Amelia, having Vaughn on a trial home visit and subject to a safety plan, left home with the children and lost touch with her safety plan participants and OCS: "So it's hard for me to say that there is safety, security, and stability in biological mother's home at this time." The incident, the court found, reflected "poor decision-making."

---

[8]    *Id.*

The court also noted Arthur's special needs, his involvement in counseling to address "some fundamental concerns necessary to be successful such as developmental concerns," and the lack of any evidence that Amelia could meet Arthur's special needs. And while acknowledging the barriers to in-person visitation caused by the COVID-19 pandemic, the court found it "particularly telling" that Amelia had "not availed herself even of the retained rights for a consistent, continuous monthly visit" following the termination of her parental rights.

In summary, the court observed that "the burden was on [Amelia] to show by clear and convincing evidence two things": First, "[t]hat . . . she's been rehabilitated and [is] capable of providing care and guidance"; and second, "that it's in the best interest of this child to have [Amelia's] parental rights reinstated." The court found that she had failed to prove either element by clear and convincing evidence. Regardless of the court's finding on the best interests factor — and regardless of whether it should have given more emphasis to the statutory presumption that siblings should remain together — the court's finding on the first factor is well supported by the evidence and sufficient to justify its ruling.

## V.    CONCLUSION

The superior court's order is AFFIRMED.